IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRY BUCKNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:20-cv-00562 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| F/N/U VARGAS, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Jerry Buckner, an inmate at Davidson County Sheriff's Office ("DCSO") in Nashville, Tennessee, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act. (Doc. No. 1.) Plaintiff also filed an application to proceed as a pauper (Doc. No. 2) and a motion to appoint counsel (Doc. No. 4). The Complaint is before the Court for an initial review under the Prison Litigation Reform Act and the in forma pauperis ("IFP") statute.

### I. Application to Proceed as a Pauper

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Plaintiff filed an IFP application (Doc. No. 2 at 1–2) and a certified copy of his inmate trust account statement (*id.* at 3–4). It appears that Plaintiff cannot pay the full filing fee in advance without undue hardship. His application will therefore be granted, and the $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

### II. Initial Review

The Court must dismiss the Complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§

1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1). The Court also must liberally construe *pro se* pleadings and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### A. Factual Allegations

In addition to the Complaint, Plaintiff attached a "Petition of Proof" to the IFP application (Doc. No. 2 at 5) and filed a supplemental notice (Doc. No. 5). The Court has considered these allegations together and has established the following summary of them for the purpose of initial review.

Since April 2020, Plaintiff has not received a diet consistent with his Rastafarian religion. (Doc. No. 1 at 3–4, 7; Doc. No. 2 at 5; Doc. No. 5 at 1.) This diet requires Plaintiff to eat plants, fruits, and vegetables, and not consume meat, milk, or soy. (Doc. No. 5 at 1–2.) Plaintiff also seems to allege that hot meals are a component of his religious diet. (Doc. No. 1 at 7 (stating that he filed a grievance claiming: "I wasn't receiving the proper diet for my Rastafarian diet. Plants, fruits, vegetables, no hot meals.").)[1] But he rarely receives hot meals (Doc. No. 1 at 4; Doc. No. 2 at 5), alleging that he "might get [one] hot meal per week" (Doc. No. 5 at 1–2). In May, Plaintiff missed "several meals" because he refused religiously non-compliant trays. (Doc. No. 1 at 5; Doc. No. 5 at 1.)

---

[1] As far as the undersigned can tell, the latter of these quoted sentences seems confusingly to set forth both things allegedly compatible with his Rastafarian diet (plants, fruits, and vegetables) and something allegedly incompatible with his Rastafarian diet (an absence of hot meals). The undersigned's conclusion that Plaintiff is alleging that plants, fruits and vegetables are consistent with (*i.e.*, required or at least permitted by) his Rastafarian diet is supported by Plaintiff's remark made elsewhere, "Per Rastafarian diet, plants, fruits, vegetables." (Doc No. 1 at 4). The undersigned's conclusion that Plaintiff is alleging that an absence of hot meals is *in*compatible with his Rastafarian diet is support by his complaint made elsewhere, "Not serving any hot meals daily!" (*Id.* at 4).

2

That same month, Plaintiff filed "several grievances" regarding his diet. (Doc. No. 1 at 7–8; Doc. No. 5 at 1.) He also spoke to Jail Administrator Austin Bodie and "every [lieutenant]," and wrote to medical staff, "every pod officer," and Trinity Food Service ("Trinity"). (Doc. No. 1 at 8.) Plaintiff received a letter from DCSO and grievance responses from Bodie, Lt. Conrad, food service employee Andre Gilbert, medical staff, and Trinity. (Doc. No. 5 at 2.)

Bodie's response stated that he would monitor Plaintiff's meals for "several days," but Bodie did not follow up. (Doc. No. 1 at 7.) Trinity's response stated that Plaintiff was receiving a Kosher diet, but Plaintiff is "not on a Kosher diet." (Doc. No. 5 at 2.) And two grievance responses of unknown origin included false statements—that only "medical" puts inmates' diets in the system (Plaintiff maintains that Chaplains put religious diets in the system), and that Plaintiff received the only meal offered on a given day (he alleges there were "several different types of meals available"). (*Id.* at 1.) Plaintiff also alleges that "most of [his] grievances are being thrown away," because he files five each week but receives about three responses each month. (*Id.* at 2.)

Plaintiff also specifically asked Officer Vargas to inform the case manager that Plaintiff received a cold tray with a salad and a peanut butter and jelly sandwich. (*Id.*) Vargas responded that he did not know the extension for the case manager or the chaplain, and that Plaintiff "must have forgotten [he] was in jail." (*Id.*)

Plaintiff sues four Defendants: Officer Vargas, Lt. Conrad, DCSO, and Trinity Food Service. (Doc. No. 1 at 1–3.) Plaintiff requests that the Court "reprimand" DCSO, order DCSO to provide him a diet consistent with his religion, and award him monetary damages. (*Id.* at 5.)

**B.    Legal Standard**

To determine if a Complaint passes initial review under the applicable statutes, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v.*

*Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). But an assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### C. Analysis

#### 1. Religious Diet

Plaintiff primarily challenges the Defendants' alleged failure to provide him a diet consistent with his Rastafarian religious beliefs. To that end, Plaintiff asserts claims under Section 1983 and the Religious Land Use and Institutionalized Persons Act, or RLUIPA. (Doc. No. 1 at 3.) Section 1983 "provides recovery for constitutional deprivations incurred under the color of state law." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). RLUIPA, meanwhile, is a statute that "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (footnote omitted).

Plaintiff's constitutional claims arise under the First and Eighth Amendments. (*See* Doc. No. 1 at 5; Doc. No. 5 at 1 (invoking the "cruel and unusual punishment" language of the Eighth Amendment).) And Plaintiff's First Amendment claim overlaps with his RLUIPA claim. The Court will therefore address Plaintiff's Eighth Amendment claim before analyzing his other claims together.

##### a. Eighth Amendment

4

Plaintiff asserts that the failure to provide him his requested diet constitutes cruel and unusual punishment. "The Eighth Amendment provides an inmate the right to be free from cruel and unusual punishment." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) As a pretrial detainee, however, Plaintiff is protected by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *See id.* (citing *Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th Cir. 2016)). Nonetheless, the Fourteenth Amendment's Due Process Clause "provides the same protections to pretrial detainees" as the Eighth Amendment's Cruel and Unusual Punishment Clause provides to convicted prisoners, and the Sixth Circuit "has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims under the same rubric." *Id.* (internal citations and quotation marks omitted). The Court will therefore consider Plaintiff's claim that his diet constitutes cruel and unusual punishment under an Eighth Amendment framework, despite his status as a pretrial detainee. *See Zlatin v. Trinity Servs. Grp.*, No. 3:19-CV-P77-CRS, 2019 WL 2144813, at *3–4 (W.D. Ky. May 16, 2019) (likewise taking that approach).

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement," which requires them to "ensure that inmates receive adequate food," among several other things. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted). But an inmate's diet does not violate the Eighth Amendment where he "continues to receive adequate nutrition." *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (citing *Cunningham v. Jones*, 667 F.3d 565, 566 (6th Cir. 1982)). Here, Plaintiff does not allege that the diet provided to him is nutritionally inadequate, and he does not allege that his health has suffered as a result. Instead, he alleges that he has refused "several" meals because his diet does not comply with his religious beliefs. Plaintiff, therefore, fails to state a claim for violating his right to be free of cruel

5

and unusual punishment. *See LaPlante v. Lovelace*, No. 2:13-cv-32, 2013 WL 5572908, at *8 (W.D. Mich. Oct. 9, 2013) (denying Eighth Amendment claim and collecting cases for the proposition that "a prisoner's claim that he was served cold meals does not amount to a constitutional deprivation").

### b. First Amendment / RLUIPA

Under the First Amendment, "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)). "In any free exercise claim, the first question is whether 'the belief or practice asserted is religious in the [plaintiff's] own scheme of things' and is 'sincerely held.'" *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). If a plaintiff makes this threshold showing, the Court then "appl[ies] the test set out in *Turner v. Safley*, 482 U.S. 78, 89 (1987), to determine whether [the] restriction is invalid." *Arauz v. Bell*, 307 F. App'x 923, 928 (6th Cir. 2009).[2] "'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Maye*, 915 F.3d at 1083 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

RLUIPA provides stronger protections for inmates than does the First Amendment. *Colvin*, 605 F.3d at 298 (citing *Lovelace v. Lee*, 472 F.3d 174, 199–200 (4th Cir. 2006)). To state a claim under RLUIPA, an inmate must (1) "demonstrate that he seeks to exercise religion out of a 'sincerely held religious belief'" and (2) "show that the government substantially burdened that religious exercise." *Cavin v. Mich. Dep't of Corrs.*, 927 F.3d 455, 458 (6th Cir. 2019) (quoting

---

[2] Four factors relevant to the *Turner* analysis are: "the connection between the regulation and the government interest; the availability of alternative means for exercising the right; the impact of the requested accommodation on the prison; and the absence of ready alternatives." *Arauz*, 307 F. App'x at 928 (citing *Turner*, 482 U.S. at 89–91).

*Holt v. Hobbs*, 574 U.S. 352, 361 (2015)). If a plaintiff satisfies these elements, then the government must show "that the burden furthers 'a compelling government interest' and 'is the least restrictive means' of doing so." *Id.* (quoting 42 U.S.C. § 2000cc-1(a)). This is a higher standard for the government to meet than the *Turner* standard for First Amendment claims brought under Section 1983. *See Colvin*, 605 F.3d at 296 (citing *Turner*, 482 U.S. at 89); *see also Cavin*, 927 F.3d at 458 (describing the government's RLUIPA burden as "daunting").

Here, construing Plaintiff's allegations in his favor and taking them as true, the Court concludes that Plaintiff states an arguably nonfrivolous claim under both the First Amendment and RLUIPA. The Court recognizes that the only specific meal described by Plaintiff did not include any offending food items. That is, Plaintiff alleges that his religious beliefs do not allow him to consume meat, milk, or soy, but he still takes issue with a meal comprised of a salad and a peanut butter and jelly sandwich. But this meal was not hot, and at this stage, the Court must accept Plaintiff's liberally construed allegation that hot meals are also a requirement of his Rastafarian diet. *See Haight v. Thompson*, 763 F.3d 554, 566 (6th Cir. 2014) ("[N]either RLUIPA nor for that matter the First Amendment permits governments or courts to inquire into the centrality to a faith of certain religious practices—dignifying some, disapproving others."); *Holt*, 574 U.S. at 362 (quoting *Thomas v. Rev. Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715–16 (1981)) ("[T]he protection of RLUIPA, no less than the guarantee of the Free Exercise Clause, is 'not limited to beliefs which are shared by all of the members of a religious sect.'"). When doing so, Plaintiff has alleged that he received religiously non-compliant meals for over two months. Although it is unclear whether Plaintiff can ultimately prevail, the Court concludes that his First Amendment and RLUIPA claims will not be dismissed at this early stage in the proceedings.

7

As for who is an appropriate Defendant for these claims, persons or entities that act "under color of state law" are subject to suit under Section 1983 and RLUIPA. *See Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted) (explaining that one element of a Section 1983 claim is that "a defendant acted under color of state law"); *Cardinal v. Metrish*, 564 F.3d 794, 798 (6th Cir. 2009) (citing 42 U.S.C. § 2000cc-5(4)(A)) (explaining that RLUIPA applies to "persons acting under color of State law"). Each of the Defendants who is a jail officer (Defendants Vargas and Conrad) is a state actor. *See Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)) ("Private individuals may be considered state actors . . . if they are 'clothed with the authority of state law.'"). Trinity Food Services is too. *See Hull v. Davidson Cnty. Sheriff's Off.*, No. 3:16-cv-02920, 2017 WL 1322104, at *4 (M.D. Tenn. Apr. 3, 2017) (concluding that an entity contracted to provide food services to inmates is a state actor). While Davidson County Sheriff's Office is not a suable entity, *see Mathes v. Metro. Gov't of Nashville and Davidson Cnty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases) ("[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit."), the Court may liberally construe Plaintiff's naming DCSO as an attempt to impose liability on Davidson County, and local government units are state actors. *See Mumford v. Basinski*, 105 F.3d 264, 267–68 (6th Cir. 1997) (citations and footnote omitted) ("[U]nlike counties and municipalities, state governments, and their arms, officers, and instrumentalities, are generally immune from private lawsuit in federal court . . . .").

Nonetheless, Plaintiff fails to state a claim against three of the four Defendants. To state a claim against a private entity like Trinity or a municipality like Davidson County, Plaintiff must allege that they had a policy or custom that directly caused him to suffer a constitutional violation.

8

*Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)) (private entity); *Hadrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978)) (municipality). And Plaintiff does not allege such a policy or custom here. Additionally, as far as Plaintiff alleges, Lt. Conrad's only involvement in this case is responding to one of Plaintiff's grievances. But that level of involvement is not sufficient to state a claim. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)) ("The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983."). These three Defendants therefore will be dismissed as parties.

As to Officer Vargas, however, Plaintiff alleges a greater level of personal involvement. Plaintiff allegedly raised concerns about his diet to Vargas directly, and Vargas refused to take any action in response. Specifically, Vargas allegedly told Plaintiff that he did not know the extension for the case manager or the chaplain, and that Plaintiff "must have forgotten [he] was in jail." Accordingly, the Court will not dismiss Plaintiff's claims under the First Amendment and RLUIPA against Vargas at this time.

Finally, the Court notes that money damages are not an available remedy under RLUIPA. *Haight*, 763 F.3d at 568–70 (collecting circuit court cases for the proposition that "RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities"). Thus, Plaintiff is not eligible to recover money damages from Vargas for his RLUIPA claim.

### 2. Grievance Procedure

Plaintiff also alleges that most of his grievances are being thrown away at DCSO because he files five each week but receives responses to about three each month. As an initial matter, the

allegation that his grievances are being thrown away is conclusory. Regardless, to the extent that Plaintiff is asserting claims that are "premised on the mishandling of his grievances or violation of [DCSO] policies," he fails to state a claim under Section 1983. *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) ("[A] prisoner has no constitutional right to an effective prison grievance procedure, *see Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and claims related to violations of prison policies do not state a constitutional violation, *see Grinter*, 532 F.3d 574.").

## III. Motion to Appoint Counsel

Plaintiff requests the appointment of counsel because he is indignant and not experienced in the law. (Doc. No. 4 at 1.) Because this is a civil action, however, Plaintiff does not have a constitutional right to the appointment of counsel, and it is "justified only in exceptional circumstances." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (citing *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993)). Plaintiff's asserted circumstances are common to many inmates, not exceptional. Accordingly, Plaintiff's motion will be denied, but without prejudice to renewing his request if circumstances warrant doing so in the future.

## IV. Conclusion

For these reasons, Plaintiff's application to proceed as a pauper (Doc. No. 2) will be granted and his motion to appoint counsel (Doc. No. 4) will be denied. Additionally, Plaintiff's claims under the First Amendment and RLUIPA against Officer Vargas will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order. All other claims and Defendants will be dismissed.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE